IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIM NO. 2010-53 |
| ) | |
| vs. ) | |
| ) | |
| JAD SHALHOUT and SAKER SHALHOUT ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT JAD SHALHOUT'S SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE FOR PERMISSION TO CONTACT AND QUESTION JURORS**

COMES NOW Defendant Jad Shalhout, by and through his counsel, Gordon C. Rhea, and submits the foregoing Second Supplemental Memorandum of Law in support of his Motion to contact and interview jurors and his Motion for a New Trial following and in response to the August 10, 2011 evidentiary hearing.

**I. Relevant Background**

Defendant Jad Shalhout was convicted on March 31, 2011 of Conspiracy to Commit Wire Fraud and Money Laundering following a three day jury trial. Approximately one week thereafter, his Attorney, Arturo Watlington, was approached in a bank of St. Thomas by alternate juror Halliday who stated that several jurors had openly expressed bias against Arabs and that they presumed them guilty because of their race/ethnicity. Alternate juror Halliday executed an affidavit on May 18, 2011 attesting to these prejudiced statements. Counsel for the Defendants then filed, before the Court ordered deadline for filing post-trial motions, a motion to contact and

interview jurors regarding these biased statements and a motion for new trial based on the allegations of prejudice[1].

Based on the allegations made in Ms. Halliday's affidavit, the Court on July 28, 2011 granted, in part, Defendant's motion to interview jurors ordering that Ms. Halliday could be questioned further under the supervision of the Federal Magistrate to determine if additional juror interviews were warranted. Said interview was to be conducted no later than August 10, 2011 and any additional briefing was to be filed no later than 5:00pm on August 10, 2011.

On August 10, 2011, a hearing (the Transcript of which is attached hereto as exhibit A) was conducted before Magistrate Judge Miller at which counsel for the Defendants and the Government questioned Ms. Halliday in depth regarding the allegations she made in her affidavit regarding juror bias. Ms. Halliday testified under oath, and a court reporter was present and a record of the proceedings made.

It should be noted that during the August 10th hearing, counsel for the Government questioned Ms. Halliday regarding the timing if her affidavit and specifically why she did not sign it until May 18th if she contacted Attorney Watlington one week after the trial. (*See* Transcript at pp. 21-27). In response, Defendant incorporates herein by reference the Defendants' prior briefing on issues related to the timeliness of the affidavit. Defendants further submit that the Court has already rejected the Government's arguments in granting permission to conduct the August 10th questioning of Ms. Halliday. In other words, all issues related to any minor "delay" in presenting the affidavit are moot. Ms. Halliday testified under oath regarding her recollections of the trial (only four months earlier), and only the reliability of that testimony should evaluated. The Government no doubt continues to cling to its "delay" argument because

---

[1] The law and argument supporting Defendants' demand for a new trial based on juror misconduct has been extensively briefed and will not be repeated herein for the sake of brevity but are incorporated herein by reference.

there is simply no defense the Government can make to the merits on the Defendants' Constitutional claims. Nowhere within the Government's prior briefing is any argument made, much less law provided to support the idea, that the Defendants' 6th Amendment right to a fair trial and 5th Amendment Due Process rights would not be violated by a conviction by a racially/ethnically biased jury.

Ms. Halliday's testimony confirmed her affidavit, provided information to identify the jurors who made prejudiced statements against Arabs, and corroborated other allegations of bias brought to the attention of Defendants that counsel have been unable to follow-up on due to the prohibitions against post-trial juror contact.

## II. Alternate Juror Halliday's Testimony

Alternate Juror Halliday testified at the August 10, 2011 hearing that she personally overheard statements of racial prejudice from other jurors on at least two or three separate occasions. The latter occurred on Thursday, March 31, 2011 after Ms. Halliday and the other alternate juror (No. 62) were excused and were alone. At that time, juror 62 openly expressed to Ms. Halliday that he was prejudiced against Arabs and believed the Defendants guilty because of the ethnicity alone. (*See* Transcript at pp. 12-13, and 16). She further testified that alternate juror 62 made these biased statement on at least one other occasion in the jury break room. (Transcript at pp. 12-13).

The first instance occurred on Tuesday, March 29, 2011 (the second day of trial and before the close of the Government's evidence). Ms. Halliday testified that she and the other alternate juror (juror No. 62) had entered the jury break room during a recess. (Transcript at p. 34). Two to three deliberating jurors, all of which were men and who sat in the front row in the

jury box[2] (Transcript at p. 17), then entered the break room discussing their belief that all Arabs "are liars, are thieves," (Transcript at p. 13) and that they must be guilty. (Transcript at p. 18). Ms. Halliday specifically recalled hearing these jurors say that, "Because you know how Arabs are; they're liars and they're thieves. *Id.* These jurors were all "[i]n agreeance." (Transcript at p. 19). These statements were made in front of and heard by the other members of the jury panel (Transcript at pp. 15 & 34), yet no member of the jury either objected to or voiced disagreement with these prejudicial beliefs. (Transcript at p. 18). No member of the jury took any action to bring these statements (and apparent violation of the jurors' oath of impartiality) to the attention of the Court thereby tacitly endorsing these beliefs. (Transcript at p. 19).

Ms. Halliday could not remember definitively which of the male front row jurors had made these statements in addition to those made by alternate juror 62 except that she was certain it was not juror No. 65. (Transcript at p. 17).

Ms. Halliday further testified that these male jurors from the front row (Transcript at p. 17) and alternate juror No. 62 would sit together "near the window" during recesses. (Transcript at pp. 31 & 35). There was conflicting testimony regarding the total number of jurors (including or in addition to alternate juror No. 62) who made racial statements. However, Ms. Halliday specifically near the conclusion of the hearing and in response to questioning from the Government and Attorney Moore testified that both she and alternate juror No. 62 had already entered the break room (Transcript at pp. 34 and 36) when "two or three" other (deliberating) jurors entered the room discussing their belief that all Arabs were "liars and thieves" and that the Defendants must therefore be guilty. (Transcript at pp. 18 & 36-37). Ms. Halliday was clear in

---

[2] Ms. Halliday was provided a copy of the Jury Seating Plan (Dckt. No. 137) to assist in her identification of the jurors who she heard making prejudicial statements.

her testimony that these jurors had determined that the Defendants were already guilty because of their race.

Utilizing the Jury Seating Chart (Dckt No. 137) and Ms. Halliday's testimony, the identity of the jurors who made the racial remarks can be narrowed down to two or three persons. Jurors No. 193, 46, and 175 sat in the front row and are male. Counsel for the Defendants cannot remember and cannot determine if juror No. 20 was male or female. For reasons discussed below, Defendants do not believe that juror No. 175 was amongst those making racially charged remarks and believe that the biased deliberating jurors were Nos. 193, 46, and possibly 20.

### III. Other Allegations of Bias Corroborated By Ms. Halliday's Testimony

Defendants have been informed by members of the St. Thomas community that juror No. 175 has made public statements of misgivings regarding the verdict because of the racial bias of certain jurors. These statements are alleged to be consistent with Ms. Halliday's testimony. Counsel for the Defendants have not, to date, attempted to present these allegations to the Court because they have not yet been given permission to contact juror No. 175. Counsel would of course not waste the Court's time in the interim presenting allegations supported only be hearsay.

Likewise, the Defendants have been informed that juror No. 65 made statements to other Arab business owners on St. Thomas that he felt the Defendants did not receive a fair trial because of the racial biases of certain members of the jury. Ms. Halliday's testimony corroborates this information as she specifically excluded juror 65 from those who made racist statements. (Transcript at p. 17). This juror specifically stated that juror 10 (a female juror from the back row) was also openly hostile toward Arabs in addition to the front row male jurors.

Again, counsel have not attempted to interview juror No. 65 without the Court's permission, and again would not present this information in the form of unsupported hearsay.

However, Ms. Halliday's testimony corroborates the information regarding juror Nos. 175 and 65 and creates a *prima facie* showing to permit interviewing these jurors.

## IV. Conclusion

Ms. Halliday's testimony is credible, reliable, and constitutes a *prima facie* showing requiring a new trial or at the very least additional inquiry. She narrowed down the 2-3 deliberating jurors who made the biased statements to 3-4 possible jurors. She has further corroborated (otherwise inadmissible) information presented to defense counsel of additional bias and other jurors who believe the verdict was tainted. A least two and possibly up to four deliberating jurors plus an alternate juror expressed open hostility toward Arabs. They stated, long before the close of the Government's case that they believed all Arabs were "thieves and liars" and that they therefore surely must be guilty. None of the other jurors expressed any disagreement with or objection to these statements of the unconstitutional pre-judgment of guilt by the jurors. None attempted to bring it to the Court's attention during trial leading to the reasonable inference that a "majority" (*see* Ms. Halliday's affidavit) of the jurors agreed with, or at the very least condoned, this bias and the jurors' violations of their oath.

The Defendants would submit that a new trial pursuant to Fed. R. Crim. P. 33 for juror misconduct could and should be ordered based on Ms. Halliday's testimony alone. Clearly additional inquiry at the very least is demanded. ""Certainly, if a criminal defendant could show that the jury was racially prejudiced, such evidence could not be ignored without trampling the [S]ixth [A]mendment's guarantee to a fair trial and an impartial jury." *Wright v. United States*,

559 F. Supp. 1139, 1151 (E.D.N.Y. 1983). "Where . . . an **offer of proof** showed that there was a substantial likelihood that a criminal defendant was prejudiced by the influence of racial bias in the jury room, to ignore the evidence might very well offend fundamental fairness." *Smith v. Brewer*, 444 F. Supp. 482, 490 (S.D. Iowa 1978). (Emphasis added). "[W]hen reasonable grounds exist to believe that the **jury may have been exposed to** . . . an [improper] influence, **the entire picture should be explored**. Often, the only way this exploration can be accomplished is by asking the jury about it'." *United States v. Schwarz*, 283 F.3d 76, 97 (2d Cir. N.Y. 2002) quoting *United States v. Moten*, 582 F.2d 654, 664 (2d Cir. 1978). (Emphasis added).

Wherefore Defendant Jad Shalhout respectfully requests that a new trial be ordered or permission be granted to interview additional jurors in order to fully explore and understand the full extent to which the "extraneous prejudicial information" and improper "outside influence" in the form of undisclosed racial prejudice was "brought to bear" on the jury. Fed. R. Evid. 606(b).

Respectfully submitted this 10th day of August, 2011:

By: /s/ Gordon C. Rhea, Esquire
Gordon C. Rhea, P.S.
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Ph: (843) 727-6500
Fx: (843) 727-6642
grhea@rpwb.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on August 10, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system so that service by electronic notice of filing will be sent to the following counsel of record:

Nagesh V. Tammara
Smock & Moorehead
P. O. Box 1498
11A Norre Gade
St. Thomas, VI 00804
Ph: (340) 777-5737
Fx: (340) 777-5758
ntammara@smvilaw.com
*Attorney for Mohannad Abdel Samad*

Rosh D. Alger, Esquire
PMG 10 Royal Dane Mall, Suite 12
St. Thomas, VI 00802
Ph: (340) 774-3036
Fx: (866) 211-2546
rosh@ralgervi.com
*Attorney for Mohannad Abdel Samad*

Arturo R. Watlington, Jr.
Law Office of Arturo Watlington
#3 Store Gronne Gade
P. O. Box 261
St. Thomas, VI 00804
Ph: (340) 774-9697
Fx: (340) 775-9111
arwatlington@yahoo.com
*Attorney for Jad M. Shalhout*

Joseph J. Mingolla, II
Law Offices of Joseph J. Mingolla, II
12D Bjerge Gade
St. Thomas, VI 00801-9820
Ph: (340) 776-2500
Fx: (340) 777-3131
jjmingolla@gmail.com
*Attorney for Jad M. Shalhout*

Treston E. Moore
Moore Dodson & Russell, P.C.
5035 Norre Gade
St. Thomas, VI 00802
Ph: (340) 777-5490
tresmoore@aol.com
*Attorney for Saker M. Shalhout*

Gabriel J. Villegas
Federal Public Defender
1019 Beltjen Place, Suite 1
P. O. Box 1327
St. Thomas, VI 00822-3450
Ph: (340) 774-4449
Fx: (340) 776-7683
Gabriel_villegas@fd.org
*Attorney for Jamil N. Daboub*

Everard F. Potter
U. S. Attorney's Office
Ron De Lugo Federal Building
5500 Veterans Drive, Suite 260
St. Thomas, VI 00802
Ph: (340) 774-5757
Fx: (340) 776-3474
everard.potter@usdoj.gov
*Attorney for U.S.A.*

Kim L. Chisolm
U. S. Attorney's Office
Ron De Lugo Federal Building
5500 Veterans Drive, Suite 260
St. Thomas, VI 00802
Ph: (340) 774-5757
Fx: (340) 776-3474
kim.chisolm@usdoj.gov
*Attorney for U.S.A.*

By: /s/ Gordon C. Rhea, Esquire